Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 27, 2016

**2016 CO 50**

**No. 14SC176, <u>Warne v. Hall</u>—Civil Procedure—Pleading.**

Warne petitioned for review of the court of appeals' judgment reversing the dismissal of Hall's complaint, which asserted a claim of intentional interference with contract.  Although invited to apply the standard for dismissal articulated in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the district court dismissed for failure to state a claim upon which relief could be granted without addressing either <u>Twombly</u> or <u>Iqbal</u> in its written order.  By contrast, the court of appeals expressly declined to apply the more recent United States Supreme Court jurisprudence governing Fed. R. Civ. P. 12(b)(6), finding itself instead bound by the Colorado Supreme Court's existing precedent, which had heavily relied on the United States Supreme Court's earlier opinion in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), and particularly its language to the effect that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove "no set of facts" in support of his claim.  Declining, therefore, to be influenced by the United States Supreme Court's more recent admonition to the federal courts that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

plausible on its face,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570), the court of appeals found the complaint sufficient to state a claim.

The Colorado Supreme Court reversed the judgment of the court of appeals finding the complaint to be sufficient. Because the Colorado Supreme Court's case law interpreting the Colorado Rules of Civil Procedure in general, and C.R.C.P. 8 and 12(b)(5) in particular, reflected first and foremost a preference to maintain uniformity in the interpretation of the federal and state rules of civil procedure and a willingness to be guided by the United States Supreme Court's interpretation of corresponding federal rules whenever possible, rather than an intent to adhere to a particular federal interpretation prevalent at some fixed point in the past, the Colorado Supreme Court found that its precedent was interpreted too narrowly by the court of appeals. Because it also found that the plaintiff's complaint, when evaluated in light of the more recent and nuanced analysis of <u>Twombly</u> and <u>Iqbal</u>, failed to state a plausible claim for relief, the Colorado Supreme Court found the complaint insufficient under the Colorado Rules of Civil Procedure.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 50

### Supreme Court Case No. 14SC176
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA719

**Petitioner:**

Menda K. Warne,

v.

**Respondent:**

Bill J. Hall.

### Judgment Reversed in Part and Affirmed in Part
*en banc*
June 27, 2016

**Attorneys for Petitioner:**
Vaughn & DeMuro
Gordon L. Vaughan
David R. DeMuro
  *Colorado Springs, Colorado*

**Attorneys for Respondent:**
Clark Williams and Matsunaka, LLC
Roger E. Clark
  *Loveland, Colorado*

**Attorneys for Amicus Curiae Colorado Civil Justice League:**
Davis Graham & Stubbs LLP
Jordan Lipp
Geoffrey C. Klingsporn
  *Denver, Colorado*

Wheeler Trigg O'Donnell LLP
Terence Ridley
Evan Stephenson

Thomas Werge
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Jaudon & Avery LLP
Jared R. Ellis
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Plaintiff Employment Lawyers Association:**
Lowrey Parady, LLC
Sarah J. Parady
  *Denver, Colorado*

**Attorneys for Amici Curiae The State of Colorado and Colorado Intergovernmental Risk Sharing Agency (CIRSA):**
Cynthia H. Coffman, Attorney General
Daniel D. Domenico, Solicitor General
Frederick R. Yarger, Assistant Solicitor General
Kathleen L. Spalding, Senior Assistant Attorney General
Matthew D. Grove, Assistant Solicitor General
  *Denver, Colorado*

Colorado Intergovernmental Risk Sharing Agency (CIRSA)
Tami A. Tanoue, General Counsel
  *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Trial Lawyers Association:**
Leventhal & Puga, P.C.
Benjamin Sachs
David Mason
  *Denver, Colorado*

Holland, Holland Edwards & Grossman, PC
John R. Holland
  *Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE HOOD** join in the dissent.

¶1 Warne petitioned for review of the court of appeals' judgment reversing the dismissal of Hall's complaint, which asserted, as relevant here, a claim of intentional interference with contract. See Hall v. Warne, No. 12CA719 (Colo. App. Jan. 23, 2014) (not published pursuant to C.A.R. 35(f)). Although invited to apply the standard for dismissal articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the district court dismissed for failure to state a claim upon which relief could be granted without addressing either Twombly or Iqbal in its written order. By contrast, the court of appeals expressly declined to apply the more recent United States Supreme Court jurisprudence governing Fed. R. Civ. P. 12(b)(6), finding itself instead bound by this court's existing precedent, which has heavily relied on the Supreme Court's earlier opinion in Conley v. Gibson, 355 U.S. 41 (1957), and particularly its language to the effect that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove "no set of facts" in support of his claim. Declining, therefore, to be influenced by the United States Supreme Court's more recent admonition to the federal courts that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), the court of appeals found the complaint sufficient to state a claim.

¶2 Because our case law interpreting the Colorado Rules of Civil Procedure in general, and C.R.C.P. 8 and 12(b)(5) in particular, reflects first and foremost a preference to maintain uniformity in the interpretation of the federal and state rules of civil procedure and a willingness to be guided by the Supreme Court's interpretation of

3

corresponding federal rules whenever possible, rather than an intent to adhere to a particular federal interpretation prevalent at some fixed point in the past, the court of appeals too narrowly understood our existing precedent. Because the plaintiff's complaint, when evaluated in light of the more recent and nuanced analysis of Twombly and Iqbal, fails to state a plausible claim for relief, the judgment of the court of appeals finding the complaint to be sufficient is reversed, and the matter is remanded with instruction to permit further proceedings consistent with this opinion.

## I.

¶3      Bill Hall filed a complaint in state district court against the Town of Gilcrest and its mayor, Menda Warne, as an individual. Hall's complaint alleged that Warne used her authority as mayor to interfere with his purchase agreement to sell a parcel of land in Gilcrest to Ensign United States Drilling, Inc., which intended, according to an attachment to the complaint, to build its headquarters on the property. Although the precise terms of the agreement were not included in the pleadings, the complaint, along with its attached exhibits, indicated that Ensign tried for more than a year to obtain approval to purchase the property and construct its headquarters in Gilcrest, but its efforts were thwarted by the town government. More specifically, the complaint alleged that Warne caused Ensign to terminate the agreement by imposing unauthorized and unreasonable conditions on its proposed site development plan, by mayoral order, after the plan had been conditionally approved by the town board at a public hearing. The complaint further alleged that Warne's actions were motivated by malice towards Hall and that the conditions imposed on Ensign's plans were

4

"disproportionate to any impact Ensign would have on the town" and "were not based on the reasonable requirements of applicable ordinances or law." On the basis of these and similar allegations, the complaint asserted several claims for relief under state and federal law, including intentional interference with contractual obligations, taking without just compensation, and violation of substantive due process under 28 U.S.C. § 1983 (2012).

¶4 Because the original complaint included both state and federal claims, the case was removed to federal district court pursuant to 28 U.S.C. § 1441 (2012). Upon removal, Warne and the town filed a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). Before briefing was complete, the federal district court accepted a stipulation by the parties whereby the federal law claims would be voluntarily dismissed by Hall and the case would be remanded to state district court for resolution of the state law claim for intentional interference with contractual obligations against Warne.[1]

¶5 On remand to the state district court, the motion to dismiss under Fed. R. Civ. P. 12(b)(6) was converted into a motion to dismiss under the corresponding, though differently-numbered state rule, C.R.C.P. 12(b)(5). In subsequent briefing, Warne and the town urged the district court to review the motion to dismiss according to the "plausible on its face" standard recently articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S.

---

[1] Two unrelated claims against the town were also included in the remand order and later dismissed by the state district court. The plaintiff did not appeal the dismissal of these claims, and thus neither is at issue before us.

5

662 (2009), rather than the so-called "no set of facts" standard from Conley v. Gibson, 355 U.S. 41 (1957), cited favorably by this court in the past. Without expressly distinguishing the Conley from the Twombly/Iqbal standard of review, the district court granted the defendants' motion to dismiss, finding that the complaint contained insufficient allegations that Warne in fact caused the conditions to be imposed on Ensign's proposed development plan that ultimately led Ensign to terminate its contract with Hall.

¶6 The plaintiff was granted leave to file an amended complaint, which he did, to include additional allegations that he had been informed that Warne exercised control over land development matters and would have used any means at her disposal to ensure that Ensign would never meet the requirements necessary to build, regardless of what had been approved by the town board. The defendants renewed their motion to dismiss for failure to state a claim, which the district court again granted, finding that while the amended complaint provided additional allegations supporting a conclusion that Warne possessed the authority and intent to block Ensign's development plan, it lacked allegations of Warne's specific conduct causing Ensign's breach. Subsequently, the district court also awarded attorney fees in favor of the defendants.

¶7 On Hall's appeal of the dismissal of his claim for contractual interference, the court of appeals reversed, finding itself bound by this court's precedent relying on Conley's "no set of facts" standard and, therefore, rejecting Warne's proposal to examine the complaint under the Twombly/Iqbal "plausible on its face" standard. Under the Conley standard, the court of appeals concluded that the complaint sufficed

6

to state a claim for relief and, more specifically, that Hall's allegations to the effect that Warne possessed the authority and intent to block Ensign's development plan and that she had exercised that authority to impose conditions despite the town board's prior approval of Ensign's plan sufficiently pled that Warne caused Ensign to terminate its contract with Hall. The court of appeals therefore also reversed the district court's award of attorney fees.

¶8 Warne petitioned this court for further review by writ of certiorari.

## II.

¶9 In <u>Bell Atlantic Corp. v. Twombly</u>, in addressing the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct, the United States Supreme Court explicated the pleading standard of Federal Rule of Civil Procedure 8 in greater detail than it had done in at least a half-century, giving particular emphasis to the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief.'" 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In that context, the Court stated that the factual allegations of the complaint must be enough to raise a right to relief "above the speculative level," <u>id.</u>, and provide "plausible grounds to infer an agreement," <u>id.</u> at 556. Had there been any doubt, two years later, in <u>Ashcroft v. Iqbal</u>, the Court made clear that <u>Twombly</u>'s "plausibility standard" was in no way limited to the antitrust conspiracy context in which it had been articulated, but rather represented a "construction of Rule 8," <u>Iqbal</u>, 556 U.S. 662, 678–80 (2009), which governs the pleading standard "in all civil actions and proceedings in the United States district courts," <u>id.</u> at 684. Quoting liberally from its earlier opinion in <u>Twombly</u>, the Court in

Iqbal characterized that standard as being underlain by two working principles: First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," id. at 678, and second, "only a complaint that states a plausible claim for relief survives a motion to dismiss," id. at 679.

¶10 The Court derived its "plausibility standard" from Rule 8 as it then existed, without feeling compelled to either amend the language of the rule or overturn any of the Court's prior interpretations, Twombly, 550 U.S. at 569 n.14, instead characterizing the Twombly plaintiffs' main argument against this interpretation as its "ostensible conflict" with an isolated statement in the Court's earlier construction in Conley v. Gibson, 355 U.S. 41 (1957), Twombly, 550 U.S. at 560–61. As the Court explained, when it spoke (some fifty years earlier in Conley) not only of the need for fair notice of the grounds for entitlement to relief, but also of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 561 (quoting Conley, 355 U.S. at 45–46), the "accepted rule" to which it referred was a rule that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," id. at 563. While the Court openly conceded that the "no set of facts" passage of Conley could be read in isolation as saying that any statement revealing the theory of the claim would suffice unless its factual impossibility could be shown from the face of the pleadings, and that many courts had understood it precisely that way, id. at 561, in context, Conley "described the breadth of opportunity to prove what an adequate complaint claims, not

8

the minimum standard of adequate pleading to govern a complaint's survival," id. at 563.

¶11    Like many federal courts and other state courts, this court took Conley's "no set of facts" language, at least ostensibly, at face value.  As the court of appeals rightly noted, this court has a long, and continuous, tradition of repeating, in reliance on Conley, that motions for dismissal are looked upon with disfavor and will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief.  See, e.g., Qwest Corp. v. Colo. Div. of Prop. Taxation,  2013 CO 39, ¶ 12, 304 P.3d 217, 221; Sprott v. Roberts, 390 P.2d 465, 467 (Colo. 1964) (quoting Conley's "no set of facts" passage for the first time in a concurring opinion, while noting that "[t]his expresses the recognized way to test the sufficiency of a claim, and it has been applied in a legion of cases in the lower federal courts").  In fact, our reliance on the federal courts for our interpretation of the pleading standards of our own Rule 8 can be traced back even before Conley, virtually to the initial replacement of our former Code of Civil Procedure by the modern Rules of Civil Procedure.  See People ex rel. Bauer v. McCloskey, 150 P.2d 861, 863 (Colo. 1944) (citing Eberle v. Sinclair Prairie Oil Co., 35 F. Supp. 296, 297 (E.D. Okla. 1940), aff'd, 120 F.2d 746 (10th Cir. 1941); Sparks v. England, 113 F.2d 579, 582 (8th Cir. 1940); Leimer v. State Mut. Life Assurance Co. of Worcester, Mass., 108 F.2d 302, 306 (8th Cir. 1940) (subsequently relied on by Conley, 355 U.S. at 45–46 n.5, for its characterization of the "accepted rule")).

¶12    The question before us today is therefore less one of whether we will abandon the Conley pleading standard in favor of the Twombly/Iqbal standard than whether

our pleading standard has always represented an attempt to mirror the accepted federal construction of the virtually identical federal pleading rules, rather than to adopt the particular interpretation of the corresponding federal rule that was prevalent at the time. For a number of reasons, in the absence of some compelling justification unique to the history or practice of this jurisdiction, we have always considered it preferable to interpret our own rules of civil procedure harmoniously with our understanding of similarly worded federal rules of practice. See Leaffer v. Zarlengo, 44 P.3d 1072, 1080 (Colo. 2002) (federal cases interpreting federal rules provide "highly persuasive guidance" when interpreting identical state rules); Faris v. Rothenberg, 648 P.2d 1089, 1091 n.1 (Colo. 1982). We see no reason to abandon that philosophy or approach today.

¶13     As a general matter, except as required by the Supremacy Clause of the Federal Constitution, we are clearly not bound to accept the United States Supreme Court's understanding of language susceptible of more than one reasonable interpretation, and for various reasons we have, on occasion, deviated in our construction of similarly worded constitutional provisions, statutes, and rules. However, quite apart from the fact that a considered interpretation by the Supreme Court, applying rules of construction equally acceptable in this jurisdiction, will virtually always be worthy of serious consideration, as we have previously observed, simply disagreeing with the Supreme Court about the meaning of the same or similar provisions appearing in both federal and state law risks undermining confidence in the judicial process and the objective interpretation of codified law. See Curious Theatre Co. v. Colo. Dep't of Pub. Health & Env't, 220 P.3d 544, 551 (Colo. 2009). This concern is only heightened when

10

the disagreement in question reflects our resistance to the Supreme Court's determination that our understanding of one of its prior pronouncements has in fact been mistaken.  Cf. Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116, 123–25 (Colo. 2007) (overturning prior decision relying on federal caselaw subsequently repudiated by the United States Supreme Court).

¶14     In light of our unequivocal statements of attribution in the past, we think it disingenuous to suggest that our understanding of the pleading requirements of our own rules was not directly borrowed from the prevailing interpretation of the corresponding federal rules, by both the lower federal courts and ultimately the Supreme Court itself.  Of course, were we to conclude that our reliance on this federal interpretation had become so much a part of the fabric of state practice that the benefit of retaining it unaltered would outweigh the benefits of harmonizing the construction of identical federal and state rules of civil procedure, we could avoid the tension created by disparate interpretations of identical rules by simply amending our rule to expressly codify a "no set of facts" standard.  We do not, however, find that to be the case.

¶15     The desirability and importance of procedural uniformity in our unique, federal form of government has been a critical factor not only in the development of federal rules capable of serving as a model for the states, but also for our own decision to adopt a version of the federal rules and construe them accordingly.  It cannot seriously be disputed that the Colorado Rules of Civil Procedure were modeled almost entirely after the corresponding federal rules, with the principal goal of establishing uniformity between state and federal judicial proceedings in this jurisdiction.  See C.R.C.P. app. D

11

at 427, Colo. Stat. Ann. vol. 1 (Supp. 1941) ("With the hope that procedure might be adopted in Colorado following as far as practicable the new federal rules, so that a Colorado lawyer would be equally at home in the courts of the United States and those of Colorado, the Colorado Bar Association in September, 1938, authorized the appointment of a Committee to effectuate that reform."); see also Thomas Keely, How Colorado Conformed State to Federal Civil Procedure, 16 F.R.D. 291 (1954) (authored by the Chairman of the Colorado Supreme Court Rules Committee).

¶16    Far from a novel concept, the prevailing policy in this country has been to favor procedural uniformity between state and federal court practice virtually since the founding of our Union.  Beginning with its adoption of the so-called "Conformity Act" in 1789, Congress required lower federal courts to largely apply the procedural law of the state in which they were located. Act of Sept. 29, 1789, ch. 21, § 2, 1 Stat. 93, 93; see also 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1002 (3d ed. 2002) (titled, "History of Federal Procedure Under Statute").  While the Conformity Act's localized approach to federal procedure ultimately proved problematic, it was replaced by the Federal Rules of Civil Procedure, which were intended to facilitate state-federal uniformity by serving as a singular, authoritative model for states to follow.  See Report of the Committee on Judicial Administration and Remedial Procedure, reprinted in Report of the Thirty-Fifth Annual Meeting of the American Bar Association at 434–35 (1912) (resolving to adopt rules of civil procedure for use in federal courts and "as a model"); see also Edson R. Sunderland, The Grant of Rule-Making Power to the Supreme Court of the United States, 32 Mich. L. Rev. 1116,

1122 (1934) (authored by one of the eventual drafters of the Federal Rules) ("[T]he primary purpose [of the Federal Rules project] . . . was the attainment of local uniformity in trial court practice between the state and federal courts.").

¶17   Beyond the convenience and practical benefits of permitting practicing attorneys to move effortlessly from one forum to another, both this court and the Supreme Court have long emphasized the undesirability of having vastly different outcomes result from nothing more than a choice of forums. See, e.g., Erie R. Co. v. Tompkins, 304 U.S. 64, 77–78 (1938); AE, Inc. v. Goodyear Tire & Rubber Co., 168 P.3d 507, 511 (Colo. 2007) ("Colorado's policy is to discourage . . . forum shopping."). While state courts are generally free to adopt procedural rules different from those governing federal proceedings, but see Brown v. W. Ry. of Ala., 338 U.S. 294, 298 (1949) (state court not permitted to dismiss federal law claim under strict local rule of pleading), the more outcome-determinative any specific disparity between state and federal rules may be, the more undesirable that disparity becomes. In this respect, there can be little question that the difference between a rule of pleading that effectively permits reliance on the compulsory process available in civil actions to discover whether grounds for the action exist in the first place and another that effectively bars such reliance without being able to first allege plausible grounds for relief can be extremely outcome-determinative. One important benefit of uniformity in federal and state procedures has been and continues to be the reduction of forum shopping.

¶18   In addition to the clear importance we have identified in maintaining a substantial degree of procedural uniformity between state and federal practice, we also

13

do not view the plausibility standard described by the Supreme Court as effecting a meaningful departure from the direction our interpretations and amendments have taken in light of the existing realities of modern practice. Just as the Supreme Court observed that a good many judges and commentators have balked at taking the literal terms of the Conley passage as a pleading standard, Twombly, 550 U.S. at 562–63 (citing numerous examples of Conley's "no set of facts" language being "questioned, criticized, and explained away" by judges and scholars, alike), we have at times found it problematic to accept factual allegations that appear too conclusory, and on at least one occasion have, without openly criticizing the "no set of facts" standard, simply found a complaint insufficient to state a claim, for the reason that it merely asserted a theory without alleging facts which, if proved, would satisfy the elements of the claim, see Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011) (favorably citing Western Innovations, Inc. v. Sonitrol Corp., 187 P.3d 1155, 1158 (Colo. App. 2008) (itself relying on Twombly, 550 U.S at 555–56)); see also Pub. Serv. Co. of Colo. v. Van Wyk, 27 P.3d 377, 385 (Colo. 2001) (predating Twombly) (Mullarky, C.J., joined by Rice and Coats, JJ., concurring in part and dissenting in part) ("[T]he Van Wyks' conclusory allegations of unreasonableness fail to support a nuisance claim and thus, the motion to dismiss was properly granted.").

¶19 Similarly, just as the Supreme Court in Twombly referenced the costs of modern litigation and the inadequacy of discovery and case management alone to weed out groundless complaints as support for its decision to finally correct the widespread misinterpretation of Conley, see Twombly, 550 U.S. at 558–59; see also Iqbal, 556 U.S. at

14

678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."), we have similarly identified a growing need, and effort in our rules, to expedite the litigation process and avoid unnecessary expense, especially with respect to discovery, see DCP Midstream, LP v. Anadarko Petroleum Corp., 2013 CO 36, ¶ 27, 303 P.3d 1187, 1194; see also Richard P. Holme, New Pretrial Rules for Civil Cases—Part II: What Is Changed, 44 Colo. Law. 111 (July 2015) (discussing 2015 amendments to the Colorado Rules of Civil Procedure, which were "designed to significantly reduce the cost of and delays in litigation and to create a new culture for the handling of lawsuits"); id. at 111 (explaining that one of the primary influences of the 2015 amendments were proposed amendments to the federal rules which were later adopted).  In light of our recent ruling in Antero Resources Corp. v. Strudley, 2015 CO 26, ¶¶ 19–26, 347 P.3d 149, 155–57, to the effect that the federal rules, in one particular regard, authorize a trial court to eliminate frivolous claims and defenses beyond what is currently authorized by our rules, the effectiveness of the "plausibility standard" in weeding out groundless complaints at the pleading stage may take on an even greater practical significance in this jurisdiction than in the federal courts.

¶20    Finally, in addition to his other arguments for not accepting the plausibility standard of Twombly and Iqbal as the correct interpretation of our own Rule 8, Hall asserts that, in fact, the state and federal rules are not similar at all and that material differences in the provisions of the two rules make a parallel interpretation of our rule untenable.  Hall refers to language in subsection (e)(1) of the rule, which finds no analog

15

in the federal rule. Compare C.R.C.P. 8(e)(1), with Fed. R. Civ. P. 8(d)(1). That subsection indicates, in relevant part, that when a pleader is without direct knowledge, allegations may be made upon information and belief, and that pleadings otherwise meeting the requirements of the rules shall not be considered objectionable "for failure to state ultimate facts as distinguished from conclusions of law." C.R.C.P. 8(e)(1).

¶21 Even without express authorization in the language of Federal Rule 8, federal courts had long understood it to permit pleading based on information and belief, and they continue to do so following Twombly and Iqbal. See generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 & nn.1–1.75 (3d ed. 2002 & 2015 Supp.) (titled, "Statement of the Claim—Pleading on Information and Belief") (gathering cases and characterizing allegations on information and belief as a "practical necessity"). Far from its conflicting with the plausibility standard, federal courts have observed that pleading based on information and belief may, in fact, be useful where the facts giving rise to a plausible claim are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible. See, e.g., Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010); see also 5 Wright & Miller, supra, § 1224 & n.7 ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject.").

¶22 With regard to C.R.C.P. 8(e)(1)'s reference to "ultimate facts" and "conclusions of law," although this reference might on first glance appear to bear on the requirement of

Twombly/Iqbal to allege plausible grounds for relief, in reality the term "ultimate facts" appears as a term of art, with reference to distinctions between "evidentiary facts," "ultimate facts," and "conclusions of law," having significance for pleading under the former code pleading system in this jurisdiction, but not for pleading under the scheme of the rules. See McCloskey, 150 P.2d at 862 (addressing C.R.C.P. 8(e)(1) and explaining that it served to distinguish our rules from code pleading rules); see also John Denison, Code Pleading in Colorado §§ 312–13 (1936) (authored by former Chief Justice of Colorado) ("It is said that ultimate fact is a conclusion by reasoning on evidentiary facts, and that evidentiary fact is acquired by the senses, i.e., sight, hearing, taste, etc.").

¶23     As the original committee comment explained, C.R.C.P. 8(e)(1)'s unique language—with regard to both pleading based on "information and belief" and pleading "ultimate facts"—was not added to distinguish our rule from the corresponding rule, but rather to "clarify the [rule's] meaning and bring it in line with the majority of the Federal decisions." C.R.C.P. 8(e)(1) note, Colo. Stat. Ann. vol. 1 (Supp. 1941).

¶24     Because we understand our prior cases as reflecting the merit of interpreting our rules of civil pleading harmoniously with the corresponding federal rules, wherever that can be accomplished without violating our own interpretative rules or interfering with important state policy, and because we find the interpretative gloss added by the Supreme Court in Twombly and Iqbal to be very much in line with the direction our rule-making has taken and the current needs of the civil justice system in this

17

jurisdiction, we join those other states already embracing the plausibility standard articulated in those cases as a statement of the pleading requirements of their own analogs to Federal Rule 8.

## III.

¶25 A plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he alleges and proves that the defendant intentionally and improperly induced a party to breach the contract or improperly made it impossible for a party to perform.[2] <u>Krystkowiak v. W.O. Brisben Cos.</u>, 90 P.3d 859, 871 (Colo. 2004). Because it is so clearly dependent upon context and circumstances, we have never attempted to rigidly define "improper" for all purposes of interference with contract, but we have favorably referenced the Restatement (Second) of Torts § 767 (Am. Law Inst. 1965), in this regard and its enumeration of potentially relevant factors, which includes the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes, the interests sought to be advanced by the actor, the social interests in protecting the freedom of action of the actor and the contractual interests of the other, the proximity or remoteness of the actor's conduct to the interference, and the relation between the parties. See <u>Trimble v. City & Cty. of Denver</u>, 697 P.2d 716, 726 (Colo. 1985). Evaluated in terms of the plausibility standard and its disregard of legal conclusions, whatever else the amended complaint may or may not have adequately

---

[2] Because Warne withdrew her argument that Hall failed to allege with adequate specificity the willful and wanton conduct required to overcome a defense of governmental immunity, <u>see</u> § 24-10-110(5)(a), (b), C.R.S. (2015), any separate statutory pleading requirements concerning willful and wanton conduct are not before us.

18

alleged, it failed to sufficiently allege that Warne acted improperly in inducing a breach or making performance of the contract between Hall and Ensign impossible.

¶26      While the complaint did not allege the specific terms of the purchase agreement between Hall and Ensign, the entirety of its allegations made clear that the agreement contemplated the town's approval of a site development plan before the property could be used for the purpose for which Ensign desired its purchase.  The thrust of Hall's complaint, therefore, was that Warne induced a breach of the purchase agreement or effectively made the purchase impossible by improperly imposing conditions on the plan that were not agreeable to Ensign.  The allegations of the complaint bearing on the question of the wrongfulness or impropriety of Warne's conduct were of two broad, and at times overlapping, kinds:  allegations that Warne's actions were motivated by malice toward Hall and allegations that the conditions and the manner of their imposition were unauthorized, unlawful, or unreasonable.

¶27      Much as was the case in both Twombly and Iqbal, the allegations of Hall's complaint were insufficient to state a claim because a number of them were conclusory and therefore not at all entitled to an assumption that they were true, and because the remainder insufficiently alleged plausible grounds for relief, largely because they were equally consistent with non-tortious conduct.  See Iqbal, 556 U.S. at 680–84; Twombly, 550 U.S. at 564–70.  The broad allegations that Warne's actions were motivated by malice or animosity toward Hall were unchallengeably conclusory allegations of a kind elsewhere held to be incapable of supporting a plausible claim for relief.  See, e.g., Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 425 (E.D.N.Y. 2010) (allegation that

19

defendant acted out of "bad faith, self-interest, malice, and personal animosity" deemed conclusory and insufficient to support a claim for tortious interference with contract); cf. Iqbal, 556 U.S. at 686 (bald allegation of discriminatory intent held insufficient to support unlawful discrimination claim). Similarly, the allegations that the conditions allegedly imposed by mayoral order were unlawful, arbitrary, or unreasonable, without reference to any particular law prohibiting them or any factual allegation specifying how or why they should be considered unreasonable, were bare, conclusory assertions. Even alleging that the conditions were disproportionate to any impact Ensign would have on the town, without alleging the reasons why and manner in which the conditions were disproportionate, could only be considered formulaic or conclusory and therefore not entitled to be assumed true. In any event, without factual allegations establishing that the imposition of disproportionate conditions exceeded Warne's authority or was otherwise prohibited, the complaint's conclusory allegation of disproportionality fails to plausibly suggest improper conduct, even if we were to assume its truth. Cf. Twombly, 550 U.S. at 566 (allegation of parallel conduct held insufficient to support antitrust claim requiring proof of an agreement).

¶28    To the extent the complaint included allegations of specific examples of conduct that could be taken as previous exhibitions of "animosity" toward Hall, like Warne's asking how and for how much he acquired the property in question and opposing Ensign's plan despite its having had the support of the town board, these allegations were, as was similarly the case in both Twombly and Iqbal, equally consistent with non-tortious explanations for her conduct, namely attempting to fulfill her duty to the

20

town by acting in its best interests. See id. at 567–68 (while alleged parallel conduct by antitrust defendants was consistent with an illegal agreement, it was equally consistent with each defendant acting independently according to its own economic interest); Iqbal, 556 U.S. at 680–81 (discrimination complaint against government officials held insufficient where there was an "obvious alternative explanation" for the challenged conduct). As the Supreme Court itself has emphasized, scrutinizing a complaint for allegations that are not as consistent with proper conduct may be particularly important with regard to the actions of government officials, who "must be neither deterred nor detracted from the vigorous performance of their duties." See Iqbal, 556 U.S. at 685–86. Even assuming, as Hall was allegedly advised, that Warne stated she was not going to allow Ensign to do business in Gilcrest, and taking as true the belief of a town official that Warne would have used any means at the disposal of the town to ensure that Ensign would never meet the requirements to build, those alleged statements do not plausibly suggest malice towards Hall any more than, or perhaps even as much as, merely an objection to doing business with Ensign, whether justified on legitimate grounds or not. Land use decisions can clearly involve a complex array of policy considerations as well as heated personal interactions, and therefore in the absence of factual allegations plausibly suggesting Warne was acting out of unrelated personal animus towards Hall or to the detriment, rather than the benefit, of the town for personal reasons, even angrily opposing Ensign's development plan does not plausibly allege impropriety.

21

## IV.

¶29    In his answer brief, the plaintiff requests that he be permitted to amend his complaint in the event his complaint is deemed insufficient according to the plausibility standard.  Rule 15(a) of our Rules of Civil Procedure provides that leave to file amended pleadings "shall be freely given when justice so requires."  Although our opinion today does not result in an amendment to the language of our rules of procedure, it clearly signals a shift in the considerations according to which a motion to dismiss is to be evaluated and, therefore, a change in the terms in which a complaint may have to be expressed to avoid dismissal.  Because the plaintiff has not until today had notice of the terms in which his claim must be pled, justice requires that he be given an opportunity to amend the allegations of this claim for relief before any ruling on a motion to dismiss for failure to state a claim.  Only if the plaintiff fails to overcome a motion to dismiss his newly amended complaint will an order of attorney fees become appropriate.

## V.

¶30    Because the plaintiff's complaint, when evaluated in light of the more recent and nuanced analysis of <u>Twombly</u> and <u>Iqbal</u>, fails to state a plausible claim for relief, the judgment of the court of appeals finding the complaint to be sufficient is reversed, and the matter is remanded with instruction to permit further proceedings consistent with this opinion.

**JUSTICE GABRIEL** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE HOOD** join in the dissent.

22

JUSTICE GABRIEL, dissenting.

¶31    Today, the majority jettisons a rule that has stood the test of time for over fifty years, based largely on an asserted preference for maintaining uniformity with federal court interpretations of analogous federal rules of procedure. In reaching this result, the majority misperceives the existing state of the law in Colorado and grafts onto C.R.C.P. 8 a "plausibility" requirement that the rule does not contain and that other courts have correctly recognized results in a loss of clarity, stability, and predictability. Even more concerning, the majority's preferred standard allows a single district judge, at the incipient stages of a case, to weigh what the judge speculates the plaintiff will plausibly be able to prove, based on the individual judge's subjective experience and common sense, and then to decide whether the plaintiff's action is viable.

¶32    I cannot subscribe to such a standard, which I believe will deny access to justice for innumerable plaintiffs with legitimate complaints. Indeed, the majority's application of its newly adopted standard in this case demonstrates the overreaching nature and ultimate unfairness of that standard.

¶33    Accordingly, I respectfully dissent.

## I. Current Law and the Plausibility Standard

¶34    As the majority correctly observes, in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957), <u>abrogated by</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007), the United States Supreme Court concluded that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove "no set of facts" in support of his or her claim. Maj. op. ¶ 1. The majority also correctly observes that this

1

standard was first cited in an opinion of this court over fifty years ago. See Sprott v. Roberts, 390 P.2d 465, 467 (Colo. 1964) (Frantz, J., concurring in the result). We have consistently adhered to that standard, without apparent difficulty or controversy, ever since.

¶35 Notwithstanding this fifty-year history, the majority now assails the Conley standard. In doing so, however, the majority does not acknowledge either our long-established rules of notice pleading or the well-settled principles that inform how the Conley standard has been implemented in practice.

¶36 It has been settled since before Conley that a plaintiff need not set out in detail the facts on which his or her claim is based. See Conley, 355 U.S. at 47. To the contrary, both Fed. R. Civ. P. 8(a)(2) and C.R.C.P. 8(a)(2) require only a "short and plain statement" of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests. Conley, 355 U.S. at 47; Smith ex rel. Leech v. Mills, 225 P.2d 483, 484 (Colo. 1950); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting Fed. R. Civ. P. 8(a)(2); Twombly, 550 U.S. at 555).

¶37 It is likewise settled that in considering a motion to dismiss for failure to state a claim, a court assesses the "well-pleaded" factual allegations of a complaint and ignores conclusory allegations or allegations purporting to assert principles of law. See Ruiz v.

2

McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002) (noting that for purposes of Fed. R. Civ. P. 12(b)(6), all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true); Fernandez-Montez v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Gray v. Univ. of Colo. Hosp. Auth., 2012 COA 113, ¶ 37, 284 P.3d 191, 198 (noting that conclusory allegations are insufficient to defeat a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim); Vickery v. Evelyn V. Trumble Living Tr., 277 P.3d 864, 869 (Colo. App. 2011) (noting that for purposes of a C.R.C.P. 12(b)(5) motion, courts must accept all well-pleaded facts as true but are not required to accept as true legal conclusions couched as factual allegations).

¶38　These principles, which are central to the Conley standard, recognize the practical limitations on how much a plaintiff can reasonably be required to plead, particularly given that the plaintiff often lacks information that is in the defendant's exclusive possession and has no means of obtaining that information absent discovery. See Conley, 355 U.S. at 47–48 (noting that (1) the civil rules' simplified notice pleading standard was made possible by the liberal opportunity for discovery and other pretrial procedures established by the rules to allow the parties to flesh out more precisely the basis of a plaintiff's claim and (2) "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

¶39 As amicus curiae Colorado Plaintiff Employment Lawyers Association observes, this kind of "information asymmetry" is especially acute in cases in which a plaintiff must prove the defendant's motives and state of mind. See Br. of Amicus Curiae Colorado Plaintiff Employment Lawyers Ass'n, at 6–7. See generally Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 43–46 (2010) (describing in detail the information asymmetry problem posed by Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), particularly in cases involving questions of intent and malice). Indeed, as discussed more fully below, the information asymmetry in this case underlies the majority's conclusion that Hall's complaint should be dismissed for failure to state a claim on which relief can be granted. Maj. op. ¶¶ 25–28.

¶40 The foregoing principles do not, however, allow a plaintiff to allege a claim and then rely on compulsory process to discover whether grounds for the action existed in the first place, as the majority suggests. See maj. op. ¶ 17. As noted above, a complaint must contain and is assessed based on its "well-pleaded allegations," and not on any conclusory allegations or allegations of law. Moreover, all allegations of a complaint (and any other pleading) are subject to the requirements of C.R.C.P. 11, which requires all pleadings of a party represented by an attorney to be signed by at least one attorney of record, and which further provides:

> The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for

4

any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Accordingly, a plaintiff may not properly make baseless allegations and then later rely on discovery tools to try to find evidence to support such claims.

¶41 For all of these reasons, I believe that the Conley standard, as it has been refined over time, has worked precisely as it was intended. Neither trial nor appellate courts in Colorado have had any difficulty in applying this standard. Nor have I seen any evidence that this standard has contributed to a flood of frivolous cases overwhelming our legal system, or that courts properly exercising their ample case management authority have had any difficulty in weeding out unmeritorious claims or in protecting defendants from needless expense and harassment. Accordingly, I am not persuaded that the existing standard has posed a problem in need of a solution, much less the sea change in pleadings practice that I believe the majority opinion will effect.

¶42 Notwithstanding the foregoing, the majority chooses to adopt the Twombly and Iqbal plausibility standard, see Iqbal, 556 U.S. at 679 (noting that to survive a motion to dismiss, a complaint must state a "plausible" claim for relief); Twombly, 550 U.S. at 556 (same), principally based on an asserted need for uniformity between how federal courts construe Fed. R. Civ. P. 8 and how Colorado courts construe the Colorado analogue, C.R.C.P. 8. For a number of reasons, I am unpersuaded.

¶43 First, although we look to federal decisions interpreting federal rules for guidance, we are not bound to interpret our rules of civil procedure in the same way that the United States Supreme Court interprets its rules. See Garcia v. Schneider

5

Energy Servs., Inc., 2012 CO 62, ¶ 10, 287 P.3d 112, 115. This is particularly true when, as here, the language of our respective rules differs.

¶44 As pertinent here, both Fed. R. Civ. P. 8 and C.R.C.P. 8 require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); C.R.C.P. 8(a)(2). Both rules also require that each allegation of a pleading be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); C.R.C.P. 8(e)(1). Unlike its federal counterpart, however, the Colorado rule proceeds to allow a pleader who lacks direct knowledge to make allegations "upon information and belief." C.R.C.P. 8(e)(1). This difference suggests to me a preference in the Colorado rules for a more lenient pleading standard than the "plausibility" standard adopted in Twombly, 550 U.S. at 556, 570, and expanded in Iqbal, 556 U.S. at 678.

¶45 Second, the Twombly and Iqbal "plausibility" standard is neither set forth in nor required by Fed. R. Civ. P. 8 or Fed. R. Civ. P. 12(b)(6) (governing motions to dismiss for failure to state a claim on which relief can be granted). Nor do I perceive any language in Colorado's corresponding provisions, C.R.C.P. 8 or C.R.C.P. 12(b)(5), that supports the adoption of such a standard. To the contrary, I believe that such a standard is inconsistent with the purposes of the foregoing rules generally and with several of our pleading rules in particular.

¶46 C.R.C.P. 8, C.R.C.P. 12(b)(5), and their federal counterparts require only fair notice of a claim, and they envision the use of proper case management and other devices set forth in the civil rules to clarify and address the merits of that claim. See,

6

e.g., Conley, 355 U.S. at 47–48; Smith ex rel. Leech, 225 P.2d at 484. The plausibility rule is contrary to these purposes.

¶47 Likewise, the "factual enhancement" that the plausibility standard requires, see Twombly, 550 U.S. at 557, is inconsistent with (1) C.R.C.P. 8(a)(2), which mandates only "a short and plain statement of the claim showing that the pleader is entitled to relief," see Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 605 (Minn. 2014) (noting that the plausibility standard raises the bar for claimants and thereby conflicts with Minnesota's counterpart to C.R.C.P. 8, which preferred non-technical, broad-brush pleadings), and (2) C.R.C.P. 8(e)(2), which allows for hypothetical pleading.

¶48 And the "factual enhancement" requirement is inconsistent with C.R.C.P. 9, which sets forth when certain matters must be pleaded with additional specificity or particularity, and which expressly provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." C.R.C.P. 9(b). Under a plausibility standard, all matters, including matters relating to a person's state of mind, arguably must be pleaded with specificity, and this would be difficult, if not impossible, when the information that the plaintiff needs to satisfy such an enhanced pleading standard is within the defendant's exclusive possession and control. See Miller, 60 Duke L.J. at 43 ("It is uncertain how plaintiffs with potentially meritorious claims are expected to plead with factual sufficiency without the benefit of some discovery, especially when they are limited in terms of time or money, or have no access to important information that often is in the possession of the defendant, especially when the defendant denies access.") (footnotes omitted). As a result, the plausibility standard

will likely result in the disproportionate dismissal of meritorious claims, thereby closing the courthouse doors to many deserving claimants when the pleading rules were, in fact, designed to <u>open</u> the doors for them. <u>See</u> <u>Twombly</u>, 550 U.S. at 575 (Stevens, J., dissenting) ("Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in. The merits of a claim would be sorted out during a flexible pretrial process and, as appropriate, through the crucible of trial.").

¶49 Third, I believe that the "plausibility" standard is unworkable and gives far too much authority to judges to dismiss claims, even before the defendant has been required to answer the complaint, based on subjective and inherently speculative factors. In <u>Iqbal</u>, 556 U.S. at 679, the Court explained what it meant by "plausible": "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>See also</u> <u>Plausible</u>, Webster's Third New Int'l Dictionary (2002) (defining "plausible," in pertinent part, as "superficially worthy of belief : CREDIBLE").

¶50 Such a standard, which is subjective on its face, allows motions to dismiss to turn on the "judicial experience and common sense" of the particular judge who happens to be assigned to the case. Moreover, such a standard requires the judge to speculate as to the evidence that a plaintiff will likely be able to present and then to weigh that presumed evidence—before the defendant has even submitted an answer to the complaint—to decide whether a claim based on such evidence would be "plausible" (itself an inherently amorphous concept). <u>See</u> <u>Webb v. Nashville Area Habitat for</u>

Humanity, Inc., 346 S.W.3d 422, 431–32 (Tenn. 2011) ("[T]he plausibility standard incorporates an evaluation and determination of the likelihood of success on the merits—a judicial weighing of the facts pleaded to see if they 'plausibly' present a claim for relief—at the earliest stage of the proceedings, before a sworn denial is even required."). In this regard, the "plausibility" standard approaches a summary judgment test, albeit without any evidentiary record. Cf. Andersen v. Lindenbaum, 160 P.3d 237, 239 (Colo. 2007) ("To avoid summary judgment, the evidence presented in opposition to such a motion must . . . be sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party.").

¶51 I cannot see how such a standard represents an advance over our present rule, which requires courts to assess the well-pleaded allegations of the complaint to determine whether, if true, such allegations set forth a viable claim for relief. To the contrary, I agree with the Tennessee Supreme Court's assessment that Twombly and Iqbal have resulted in "a loss of clarity, stability, and predictability in federal pleadings practice." Webb, 346 S.W.3d at 431. I fear that the same outcome is now likely in Colorado.

¶52 Fourth, in trumpeting the need for uniformity between the state and federal standards, the majority suggests that adopting a plausibility standard is necessary to expedite litigation and avoid unnecessary expense. See maj. op. ¶ 19. The majority, however, does not adequately account for the case management tools that we have recently implemented to achieve the majority's desired ends. Specifically, although the majority's concern for expediting litigation and avoiding unnecessary costs, particularly

9

with respect to discovery, is appropriate, we recently adopted significant amendments to our rules of civil procedure to address these very concerns. See generally Richard P. Holme, New Pretrial Rules for Civil Cases—Part II: What is Changed, 44 Colo. Law. 111 (July 2015) (discussing the series of amendments to the Colorado Rules of Civil Procedure that became effective on July 1, 2015 and that were designed to reduce significantly the costs and delays in litigation, particularly with respect to discovery matters). I have every confidence in our trial judges' abilities to implement these rules to achieve the desired ends. I therefore see no reason to alter our longstanding pleading rules, particularly in the context of this litigation as opposed to through the normal rulemaking process, to try to achieve the same ends.

¶53 Finally, I am unconvinced by the majority's suggestion that adopting the plausibility standard is necessary to avoid the undesirability of having "vastly different outcomes result from nothing more than a choice of forums." Maj. op. ¶ 17. The federal and Colorado standards have been different for nine years, and I have seen no evidence to suggest that these different standards have resulted in a spike in forum-shopping or in "vastly different outcomes" (although I would anticipate that under the federal standard, some meritorious complaints likely have been dismissed).

¶54 For these reasons, I see no compelling reason to overturn more than fifty years of precedent in order to adopt a plausibility standard that I believe is unworkable and unfair. See Walsh, 851 N.W.2d at 604 ("The doctrine of stare decisis directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process. We therefore require 'a compelling reason' to overrule our

precedent. . . . [The defendant] has not presented a compelling textual reason to overrule [the cases setting forth the prevailing pleading standards in Minnesota].") (quoting Oanes v. Allstate Ins. Co., 617 N.W.2d 401, 406 (Minn. 2000)).

## II. Application

¶55 The overreaching nature and unfairness of the plausibility standard that I have identified above are well demonstrated by the majority's application of that standard in this case.

¶56 The majority concludes that Hall's complaint failed to sufficiently allege that Warne acted improperly in inducing a breach or making performance of the contract between Hall and Ensign impossible. Maj. op. ¶ 25. In reaching this conclusion, the majority deems Hall's allegations to be conclusory and sees no factual allegations plausibly suggesting that Warne was acting out of unrelated personal animus toward Hall or to the detriment, rather than the benefit, of the town for personal reasons. Id. at ¶¶ 27–28. I do not agree with the majority's reading of Hall's complaint.

¶57 To establish a claim for intentional interference with contract, a plaintiff must prove that the defendant (1) was aware of a contract between two parties, (2) intended that one of the parties breach the contract, and (3) induced the party to breach or make it impossible for the party to perform the contract. Krystkowiak v. W.O. Brisben Cos., 90 P.3d 859, 871 (Colo. 2004). In addition, the defendant must have acted "improperly" in causing the result. Id.

¶58 To determine whether the defendant acted improperly, courts consider the following factors:

11

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979); accord Memorial Gardens, Inc. v. Olympian

Sales & Mgmt. Consultants, Inc., 690 P.2d 207, 210 & n.7 (Colo. 1984).

¶59    Here, Hall alleged, in substance, the following facts:

- Hall entered into a contract to sell certain property in the Town of Gilcrest to Ensign.

- In subsequent meetings with the Town Planner and the Town Board, the Town imposed a series of conditions on Ensign. These conditions were onerous, and many of them had no lawful basis either in the Town's own ordinances or in any other applicable laws or regulations.

- In May and June 2007, the Town made additional baseless demands on Ensign. As a result, Ensign became increasingly frustrated and began to look elsewhere for its business expansion.

- At a July 16, 2007 meeting of the Town Board, which Warne, the Town's mayor, attended, Hall explained that if the Town continued to demand more and more conditions of Ensign that were not tied to applicable law or regulations, then Ensign would withdraw from the contract to buy Hall's property and find somewhere else to do business.

- The Board then unanimously approved Ensign's site plan and application (Warne did not vote).

12

- After this unanimous vote, Warne stormed out of the meeting room and stated that she was not going to allow Ensign to do business in Gilcrest.

- A former mayor and planning commission member stated that Warne exercised control over all land use matters and would have used any means at the Town's disposal to ensure that Ensign would never meet the requirements necessary to build, regardless of what had been approved by the Board.

- Consistent with this statement, after the Board unanimously approved Ensign's site plan and application, and notwithstanding the fact that Hall had advised the Board (and Warne) that further conditions would cause Ensign to terminate its contract with Hall, the Town imposed still more conditions on Ensign. These conditions again imposed requirements beyond those required by the Town code; they were not connected to, or were disproportionate to, any impact that Ensign's operations would have had on the Town; and they were not reasonably related to the public health, safety, or welfare of the Town or its residents.

- As a result of these new requirements and exactions, Ensign terminated its contract with Hall, as it said it would do (and as Warne was advised it would do).

- Warne had previously exhibited animosity toward Hall, the additional exactions and conditions were imposed at Warne's insistence and on her order, and Warne's actions were motivated by malice toward Hall.

¶60 In my view, and as the division below concluded, Hall v. Town of Gilcrest, No. 12CA0719, slip op. at 7–12 (Colo. App. Jan. 23, 2014), these allegations more than adequately alleged the requisite elements of an intentional interference with contract claim. Indeed, I would so conclude even were I to apply the plausibility standard.

¶61 Specifically, it appears undisputed that Hall properly alleged the existence of a contract between himself and Ensign and that Warne knew of this contract. Hall has also alleged specific facts to establish that Warne intended for Ensign to terminate this

13

contract and that she either induced Ensign to breach the contract or made Ensign's performance impossible. For example, as noted above, Hall alleged that (1) Warne was told that Ensign would terminate the contract if more conditions were imposed; (2) she stated her intention to ensure that Ensign would not do business in Gilcrest; and (3) knowing that Ensign would terminate the contract if further conditions were imposed, she orchestrated the imposition of additional unreasonable (and legally unfounded) conditions, which, in fact, induced Ensign to terminate its contract with Hall.

¶62 Finally, Hall has sufficiently alleged that Warne's conduct was improper. As noted above, he alleged that after the Town Board had unanimously approved Ensign's site plan and application, Warne acted unilaterally to impose unprecedented and unreasonable conditions that were inconsistent with the Town code, and Hall alleged that Warne did so out of malice toward him and with the intent of ensuring that Ensign would terminate its contract with him. In my view, such allegations are not at all conclusory, and they clearly and sufficiently assert that Warne was acting out of unrelated personal animus toward Hall, rather than for the Town's benefit (the Town Board, after all, had unanimously approved the deal).

¶63 Although the majority deems Hall's allegations insufficient, it is not clear to me, and the majority does not indicate, what more Hall could possibly have alleged. This case reflects precisely the type of information asymmetry scenario discussed above, in which a party is required to make allegations about another party's state of mind. Absent an ability to read Warne's mind, Hall could do no more than plead conduct

14

reflecting her improper motives, and he has done that with what I perceive to be ample specificity.

¶64 In these circumstances, it is clear to me that Warne has received the reasonable notice of the nature and basis of Hall's claim to which she was entitled under C.R.C.P. 8. It is equally clear to me that Hall has pleaded a viable intentional interference with contract claim. Indeed, as pleaded, the complaint sets forth what I view to be a prototypical intentional interference case.

¶65 In holding otherwise, the majority has effectively granted Warne summary judgment before she was even required to respond to the complaint and before giving Hall a fair opportunity to conduct discovery to establish facts that are in Warne's exclusive possession and control. In doing so, I believe that the majority has denied Hall the fair day in court to which he was entitled.

### III. Conclusion

¶66 For these reasons, I respectfully dissent.

I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE HOOD join in this dissent.